IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2012

**STATE OF TENNESSEE v. JOSHUA CALEB MORRIS**

**Direct Appeal from the Criminal Court of Knox County**
**Nos. 88269, 88270, 88271, 89558     Bob R. McGee, Judge**

**No. E2011-01243-CCA-R3-CD - Filed March 9, 2012**

Joshua Caleb Morris ("the Defendant") pled guilty to two counts of aggravated burglary, three counts of theft, and one count of possession of drug paraphernalia. The trial court sentenced the Defendant as a Range I standard offender to a total effective sentence of six years, to be suspended on twelve years probation under the supervision of the Community Alternative to Prison Program. Upon the filing of a revocation warrant, the Defendant was taken into custody and a probation revocation hearing was held. At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement. The Defendant has appealed the trial court's ruling. Upon our review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender; Christy Murray, Assistant District Public Defender, Knoxville, Tennessee, for the appellant, Joshua Caleb Morris.

Robert E. Cooper, Jr., Attorney General & Reporter; Nicholas W. Spangler, Assistant Attorney General; Randall Nichols, District Attorney General; Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On July 11, 2008, the Defendant pled guilty to two counts of aggravated burglary, three counts of theft, and one count of possession of drug paraphernalia. Pursuant to the plea

agreement, the trial court sentenced the Defendant as a Range I standard offender to a total effective sentence of six years, suspended on twelve years probation, to be supervised by the Community Alternative to Prison Program ("CAPP"). On April 4, 2011, the Defendant's probation officer, Jack Dennis, filed a violation of probation warrant. The probation revocation hearing was held on May 6, 2011.

Dennis testified at the probation revocation hearing that he filed a violation warrant based upon the Defendant's relapse on two separate occasions. The first relapse, in February of 2011, involved the Defendant's admitted use of Roxicet (a brand of oxycodone[1]) when a drug screen came back "adulterated." The second relapse, in March of 2011, involved the Defendant's admitted use of synthetic THC and Molly's Plant Food[2] (methedrone). To Dennis's knowledge, Molly's Plant Food was not illegal at the time of the Defendant's use. Since the Defendant's release into CAPP, he had a total of five relapses, including a positive drug screen in May of 2010. Additionally, Dennis stated that, at the time of the most recent warrant, the Defendant was behind in his required community service, in paying his court costs, and in paying his Community Corrections fees.

Dennis testified that the Defendant lived in Jellinek Halfway House and was also a participant in a treatment program as well as a drug court program. He acknowledged that the Defendant had been cooperative throughout most of their interactions, and Dennis received feedback that the Defendant had been cooperative at Jellinek as well. While at Jellinek, the Defendant participated in house meetings and Narcotics Anonymous or Alcoholics Anonymous meetings, and he met with a counselor regularly. Dennis also acknowledged that the Defendant had become "house manager" at Jellinek, meaning that he supervises the residents in the house to see that "everyone . . . shows up, does their chores, things of that nature." Dennis stated that the Defendant also worked about thirty hours a week at IHOP. According to Dennis, CAPP's position regarding the Defendant was that he should be required to serve the remainder of his sentence.

The Defendant testified at the revocation hearing regarding his thirteen-year struggle with drug addiction. He stated that, when he was in high school, a family member had been prescribed medication for injuries related to an accident. The Defendant found this medication and started using it. By the time the Defendant was out of high school, he had developed an addiction to oxycodone. As his tolerance developed, he could no longer afford the drugs he "required to simply get out of bed every day," which led to the crimes he began

---

[1] Oxycodone is a controlled substance listed under Tennessee Code Annotated section 39-17-408 (2010), prohibited pursuant to Tennessee Code Annotated section 39-17-418 (2010).

[2] Dennis described Molly's Plant Food as "a synthetic stimulant that has side effects similar to Ecstasy."

committing in 2006. He acknowledged that, in order to pay for the drugs, he broke into the homes of families he had known his entire life.

The Defendant stated that around 2007, when he found out his girlfriend was pregnant, he went to a six-month treatment program in Georgia. While at the treatment facility, detectives sought him out about potential charges related to the crimes committed beginning in 2006. Following the completion of his treatment, he came back to Tennessee and turned himself in. He stated that since his son's birth, he has taken his son out to eat on occasion and paid for half of the costs associated with daycare. The Defendant acknowledged that he has been diagnosed with bipolar disorder.

On cross-examination, the Defendant stated that he bought Roxicet from another individual in the CAPP program. He agreed that he should have told his probation officer about this transaction. He also acknowledged that, in the past few years, he has been through several halfway houses, detox programs at two different hospitals, six weeks of treatment in Georgia, and eight weeks of treatment at a facility called Steps House. He obtained Molly's Plant Food from two different gas stations because it was sold over the counter at that time. The Defendant stated that, when he first tried it, the attendant told him that taking it would be analogous to an energy drink. Initially, he only had about one capsule of "Molly's Plant Food" per day, but after a few weeks, he was having as much as five capsules per day, priced at $12.00 per capsule.

Sherry Morris, the Defendant's mother, testified that she has seen her son undergo changes since he went on probation. She noted that he obtained and maintained a job and worked hard to be more involved with his family. She stated that the Defendant "goes every day and picks [his son] up, gets him dressed, gets him breakfast, and takes him to daycare. Calls him every night and checks on him. They are really close." On cross-examination, Morris acknowledged that she would not trust her son with her grandson if he was snorting plant food every day.

Donald Carter, the court liaison for the Knox County Drug Court, testified that he discussed the Defendant's situation with other individuals involved in his case. From these discussions, he understood that the drug court decided to sanction the Defendant to ninety-six hours in jail based on the Defendant's relapse. However, he reiterated that the drug court is willing to allow the Defendant to stay in the program so long as the trial court permits.

After considering the proof, the trial court stated that, although the February 2011 use of oxycodone resulted in a sanction by the drug court, it was nevertheless a legitimate basis for revocation of probation as well. The trial court also noted the Defendant's many attempts to overcome his drug addiction. However, the trial court stated, "this Court . . . is simply

going to reject the notion that a person can continue to break the law by illegal use of drugs and get away with it by saying, I'm in treatment, I just need treatment." Accordingly, the trial court revoked the defendant's probation, placing him in the custody of the Tennessee Department of Correction. The trial court allowed the Defendant to receive credit for all time previously served on the sentence as well as any CAPP credit, if applicable. The Defendant timely appeals, asserting that his probation should not have been revoked, that he was denied procedural and substantive due process, and that the execution of his original sentence was arbitrary.

## Analysis

The Defendant asserts that his probation revocation was improper for two reasons. First, the Defendant argues that his use of an uncontrolled substance did not violate the terms of his probation. Second, he asserts that his "uncorroborated admission" is not in itself sufficient to support a probation revocation.

Tennessee Code Annotated section 40-35-311 provides that, in a probation revocation proceeding, the court "may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d) (2010). And,

> [i]f the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence, and:
>
> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with [section] 40-35-310; or
>
> (B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

Id. § 40-35-311(e)(1); see also State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999). Thus, the State must only prove that the defendant violated the terms of his or her probation by a preponderance of the evidence. In this regard, "[t]he trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him [or her] to make an intelligent decision." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); see also State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) ("The proof of a probation violation need not

be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment.") (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).[3]

On appeal, we will not disturb the trial court's decision to revoke probation absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); see also State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). We will grant relief only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" Shaffer, 45 S.W.3d at 555 (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

The Defendant first asserts that methedrone was not a controlled substance and, thus, the use of it did not violate the terms of his probation. However, we note that the trial court revoked the Defendant's probation upon its finding that the proof established that he used oxycodone. The trial court made no mention of the use of methedrone in revoking probation. Thus, it is unnecessary for us to determine whether his use of methedrone is sufficient to revoke probation because that use was not the basis for the trial court's decision.[4] The Defendant admitted to using oxycodone, a controlled substance that he admitted to purchasing from another individual within CAPP.

Although the Defendant has made no argument that his use of oxycodone did not violate the terms of his probation, we nevertheless will address it here. The Defendant has not provided this Court with a copy of the terms of his probation and, consequently, has waived his right to assert that his conduct did not violate his probation. "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue

---

[3] In Harkins, our Supreme Court stated that, "[i]n order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." 811 S.W.2d at 82. However, as pointed out by Judge Witt, "the statute governing probation revocation in effect at the time of . . . Harkins . . . contained no specific burden of proof to be met before the trial court could revoke probation." State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). As set forth above, the statute applicable in this case permits the trial court to revoke probation only upon finding by a preponderance of the evidence that the defendant has violated the terms of his or her probation. We therefore join Judge Witt in "question[ing] whether the 'no substantial evidence' language of Harkins remains applicable to the determination whether the trial court abused its discretion when revoking probation." Farrar, 355 S.W.3d at 586.

[4] Furthermore, even if the trial court based its decision on the Defendant's use of methedrone, the Defendant has not supplied the terms of his probation in the record. Thus, we would be unable to determine whether the Defendant's use of methedrone violated the terms of his probation. See State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993); Tenn. R. App. P. 24(a).

presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)); see also Tenn. R. App. P. 24(a). This Court addressed this issue in State v. Nick Defillipis, No. M2007-01647-CCA-R3-CD, 2008 WL 2388632, at *5 (Tenn. Crim. App. June 12, 2008). In Defillipis, because the appellant failed to provide the terms of his probation, this Court had "no choice but to assume the probation order contained a condition that he not use illegal drugs." Id. at *4. In further support of this assumption, this Court stated, "'[U]nlike other conditions of probation that may be imposed, the Defendant is deemed to have notice that his . . . conduct must conform to the requirements of the law from the time of the law's enactment.'" Id. at *5 (quoting State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997)). Here, the Defendant has conceded that the terms of his probation included a prohibition against controlled substances. Moreover, the trial court stated that even though the use of oxycodone resulted in a sanction by the drug court, it was nevertheless a legitimate basis for the revocation as well. Thus, the trial court did not abuse its discretion in its determination that the Defendant's use of oxycodone violated the terms of the Defendant's probation.

The Defendant next asserts that his probation revocation was improper because his "uncorroborated admission" alone was not sufficient for the trial court to use as a basis for its decision. Specifically, the Defendant contends that his uncorroborated admission is distinguishable from the plethora of decisions made by this Court supporting the contention that an uncorroborated admission is sufficient as a basis for a probation revocation. He also claims that his only admission was to the use of an uncontrolled substance and not to violating the terms of his probation.

We note, once again, that the trial court based its decision upon the use of oxycodone. Thus, the Defendant's repeated assertions that the trial court erroneously based its decision upon the Defendant's use of methedrone are misguided. To the extent the trial court's decision was based upon the Defendant's "uncorroborated admission" to the use of oxycodone, the cases listed in the Defendant's brief provide helpful analysis. In State v. Bryan James Farve, No. E2008-00939-CCA-R3-CD, 2009 WL 749307 at *6 (Tenn. Crim. App. Mar. 23, 2009), this Court held that because the State must only prove a probation violation by a preponderance of the evidence, an uncorroborated admission by a defendant may satisfy that burden. In Farve, this Court took note of the fact that the defendant admitted to drug use when he knew about an upcoming drug test. Id. Similarly, the Defendant in the present case admitted to the use of oxycodone when his drug test returned "adulterated." Thus, the Defendant's admission was sufficient proof on the State's part for the trial court to determine a probation violation by a preponderance of the evidence. Therefore, the trial court did not abuse its discretion in revoking the Defendant's probation on that basis.

The Defendant's next argument is that a reversal of the probation revocation is necessary "in order to protect his procedural and substantive due process rights." Specifically, he asserts that because he did not know that he was violating the terms of his probation, "using his admission as the sole justification to revoke his probation, especially without considering less restrictive alternatives, violates his due process rights." Once again, the Defendant incorrectly contends that the trial court's decision was based upon his admission to the use of methedrone, which he asserts was not a controlled substance at the time of the Defendant's use and, thus, did not violate the terms of his probation. We have already determined that his uncorroborated admission to using oxycodone provides a sufficient basis to revoke probation. Thus, the Defendant's claim is without merit.

Finally, the Defendant argues that the trial court acted arbitrarily when it reinstated the Defendant's original sentence. When a trial court revokes a defendant's probation, the court may then order the defendant to serve out his or her original sentence. See Tenn. Code Ann. §§ 40-35-310 (2010) and -311(e); State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999). "This court has repeatedly cautioned that 'an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing.'" State v. Juan Manuel Coronado, II, No.E2010-01058-CCA-R3-CD, 2011 WL 704543, at *3 (Tenn. Crim. App. Mar. 1, 2011) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)) (other citation omitted).

The trial court found that the Defendant used oxycodone, a controlled substance. Upon a probation revocation, the trial court has the discretion to reinstate the original sentence. See Tenn. Code Ann. §§ 40-35-310 and 311(e). The trial court spoke at length about the Defendant's struggle with addiction to prescription medication. The court stated, "this Court . . . is simply going to reject the notion that a person can continue to break the law by illegal use of drugs and get away with it by saying, I'm in treatment, I just need treatment." Thus, the trial court's decision was not arbitrary but one that was calculated based on the court's knowledge of the Defendant's many second chances and, ultimately, the Defendant's failure to rehabilitate himself. Although a trial court must consider sentencing principles when determining the original sentence, the court is under no obligation to reconsider those principles following a probation revocation. See State v. Joshua Maurice Hickman, No. M2010-01063-CCA-R3-CD, 2011 WL 2306104, at *3 (Tenn. Crim. App. June 8, 2011). Thus, there was no error on the part of the trial court in imposing the original sentence upon the Defendant.

## Conclusion

The trial court did not abuse its discretion in revoking the Defendant's probation and ordering him to serve the remainder of his sentence in confinement. Accordingly, the judgment of the trial court is affirmed.

_____
JEFFREY S. BIVINS, JUDGE